# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN HONDA FINANCE CORP.** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 20-3267** |
| | : | |
| **TOWNSHIP OF ASTON, et al.** | : | |
| **Defendants.** | : | |

---

**DIAMOND, J.**  **MEMORANDUM**  **JUNE 30, 2021**

American Honda Finance Corporation urges that municipalities should afford greater due process protections to lienholders whose vehicles those municipalities seize and impound. See, e.g., American Honda Finance Corp. v. City of Revere, 471 F.Supp.3d 399 (D. Mass. July 8, 2020). Given the frequency with which vehicles are leased or purchased on credit (with a lien usually provided to the financing entity), this is not an obscure issue. Here, Honda urges that the haphazard and dilatory manner in which Aston Township seized and impounded a car over which Honda had a lien caused the Company significant economic injury. In filings replete with misstatements, Aston insists that Honda's challenge is properly directed at state authorities alone. The record confirms, however, that Aston violated Honda's due process rights.

The Parties have cross-moved for summary judgment. I will grant Honda's Motion and deny that submitted by Aston.

## JURISDICTION

Honda brings this action pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, and the Pennsylvania Constitution. The Court has jurisdiction to hear the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction to hear the state law claims under 28 U.S.C. § 1367.

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is evidence on which a reasonable fact finder could return a verdict for the nonmoving party. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the case's outcome under governing law. Id. (citing Anderson, 477 U.S. at 248). I must view facts and draw all reasonable inferences in the opposing party's favor, although "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010); see Anderson 477 U.S. at 255.

If the moving party satisfies its burden, the opposing party must then show a disputed material factual issue. It is not enough simply to reiterate factual allegations or "show some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must establish a triable issue by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Finally, summary judgment is appropriate if the responding party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**FACTS**

I have construed all facts and resolved all disputes in Aston's favor.

**The Seizure**

On August 30, 2018, Aston Police stopped a black 2018 Honda Accord bearing New York plates. (Pl. SUMF ⁋⁋1, 13; Def. SUMF ⁋5.) After a brief investigation, the police arrested the Accord's driver, Dale Bramble, and his three passengers for conspiring to steal from the U.S. mail. (Id.; Def. SUMF ⁋5.) Police then directed Steve Luongo's Towing, Inc.—which serves as Aston's "police impound"–to tow the car from the scene. (Pl. SUMF ⁋⁋9, 14; Police Rep. 15 (referring to Luongo's as "police impound").) The "removal and impounding" of the Vehicle was authorized by Pennsylvania law:

> (c) Removal to garage or place of safety.--Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:
> [. . . .]
>> (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

75 P.S. § 3352(c)(3); (Doc. No. 27-18, Ex. C., Aston Inter. Resp. No. 1).

**The Vehicle's Status**

On June 6, 2018 Honda had perfected a lien over the Accord, which was publicly recorded by the New York State Department of Motor Vehicles. (Pl. SUMF ⁋⁋2-4; Donahue Declaration, Doc. No. 27-3, ⁋⁋3-7.) At the time of the August 30 seizure, Rayshon Smith was the Accord's owner. (Pl. SUMF ⁋⁋1, 6.) The record does not indicate how Bramble came into the car's possession. Earlier in August, Smith had defaulted on his required payments, entitling Honda to possession of the Accord when it was seized on August 30. (Id. at ⁋5.) Smith nonetheless somehow transferred the Accord's title to Mango Towing, Inc. on October 10, 2018 (while it was

still stored at Luongo's). (Id. at ¶6.) Despite this title transfer, Honda's lien remained. (Id. at ¶7.)

**The Township's Relationship with Luongo's**

Since at least 2010, the Township has contracted with Luongo's to provide towing services to the Aston Police. (Doc. No. 27-21, Ex. F., Luongo's Contract.) The contract provides that Luongo's will tow: "such motor vehicles as are determined to be abandoned"; "[vehicles which] must be towed because they are in violation of a Township ordinance or the laws of the Commonwealth of Pennsylvania;" and vehicles "having been involved in some crime or criminal activity." (Id.) The contract requires abandoned vehicles to be towed "within 72 hours of notification and the completion by the Township of any necessary forms." Other categories of vehicle must be towed within one hour of Township notification. (Id. at 2.) Luongo's may not seek payment from Aston for these towing services; instead, it charges fees to third parties. (Id. at 4) (". . . [Luongo's] agrees that it shall not assert any claim against the Township for any fee or charge . . . . [Luongo's is] fully responsible for the collection of any and all costs and fees for their towing and storage . . . .").

**Aston's Subsequent Actions**

After it was towed, the Accord remained at Luongo's impound yard, accruing storage fees and depreciating in value, until Honda reached a settlement with Luongo's for the car's return on January 13, 2020. (Pl. SUMF ¶¶41-43; Doc. No. 26, Ex. M, Salvor's Application.)

According to Aston Police records, the Accord—which bore NY plates—had been at Luongo's for twenty-four days when, on September 23, 2018, Aston Police Officer Joseph Hart contacted the Binghamton, N.Y. Police, trying to notify the car's owner, Mr. Smith, of its seizure. (Doc. No. 27-24, Ex. I, Aston Police Log 14.) Binghamton Police could not find Mr. Smith at his recorded residence. (Id.) The following day, September 24, Aston Police Sgt. Chad Osborn

"confirmed" that because the car "was not claimed from police impound," he had "completed a PA 952 form for the abandoned vehicle." (Id.) Osborne was less than honest in "complet[ing]" the "form".

The "PA 952 form" is titled "POLICE REQUEST FOR REMOVAL OF ABANDONED VEHICLE". (Doc. No. 27-25, Ex. J, 952 Form.) Although Osborn completed the form on September 23, 2018, he back-dated it to August 30, the day of the seizure. (Id.) He described the Accord as a "hazard," and gave its "location" as the place where it was seized weeks earlier (*not* Luongo's impound yard). (Id.) Osborne also wrote that the car "has been declared abandoned by the [Aston] Police Department … [which] requested … [Luongo's] to remove it." (Id.) Osborne thus completed the Form so that it would appear as a Police 'request' for Luongo's to tow a very recently abandoned vehicle. To be truthful and accurate, however, Osborne should have acknowledged that the car had been seized and towed incident to arrest and, weeks later, declared presumptively abandoned. Not coincidentally, through his misrepresentations, Osborne made it appear that Aston had complied with the Pennsylvania Department of Transportation's requirement that "Form MV-952 must be submitted to PennDOT within 48 hours *from the date of tow*." Pa. Salvor Manual, PA DOT 14 (emphasis added).

Remarkably, Aston admits that Osborne followed the Township's standard practice in his handling of the Accord. (See Aston Inter. Resp. No. 4 ("Aston Township police practice with respect to the vehicle in question was standard . . . .").) Compounding Osborne's misstatements, Aston urges that a Pennsylvania statute required the Township to declare the Accord abandoned when it did. See 75 Pa.C.S.A. § 7303.1 (Duty of police and salvors); (Aston Inter. Resp. No. 3 (". . . the Township completes a required Commonwealth form 952 which is submitted to the Commonwealth at which point the Commonwealth takes over the function of making notifications

to owners and lienholders . . . .").) Once again, this is simply untrue: § 7303.1 does not apply in the circumstances presented here. Rather, it governs requests by police for "licensed salvor[s]" to "remove, possess and further process" *abandoned* vehicles. It says nothing about mischaracterizing a vehicle seizure incident to arrest as an abandonment and backdating the resulting form. (<u>Id.</u>; <u>see also</u> <u>id.</u> ("Duty of salvors.--Upon receipt of the written abandoned vehicle information report . . . a salvor shall take possession of and remove to the storage facility of the salvor any abandoned vehicle . . . .").

Finally, it appears that the Accord did not meet the statutory definition of 'abandoned' when Osborne declared it so on September 24. <u>Compare</u> 75 Pa. C.S.A. § 102 (defining an "abandoned vehicle" as, *inter alia*, one that "has remained on the private property of a salvor for 20 days") <u>with</u> 75 Pa. C.S.A. § 7301 (statutory scheme distinguishes a "salvor" from a "repair or towing business") <u>and</u> Aston Inter. Resp. No. 3 (Luongo's acts as "police impound" from date of police seizure until Aston's declaration of abandonment; Luongo's then acts "in their role as Salvor") <u>and</u> 952 Form (Form gave place of tow, *not Luongo's*, as location of Accord's 'abandonment').

In this dishonest manner, Aston purported to follow Pennsylvania's abandoned vehicle notice procedures *more than three weeks after* the law required. While the Accord was held at Luongo's, Aston did not try to notify lienholders of the car's seizure, nor did Aston hold a hearing concerning the declaration of abandonment. (<u>See</u> Aston Inter. Resp. Nos. 2, 13; Aston RFP Resp. Nos. 7, 16.) Once again, this was the Township's standard practice for handling similarly seized automobiles. (<u>See</u> Aston Inter. Resp. No. 4 ("Aston Township police practice with respect to the vehicle in question was standard . . . .").)

Because Aston made no efforts to search for or notify lienholders, Honda did not (and,

indeed, could not) request a hearing to dispute a seizure of which it was ignorant. Aston nonetheless argues that Honda could have requested a hearing before the abandonment declaration. (See, e.g., Def. SUMF ¶9.) Moreover, the Township ignores that it affords such a hearing only to those vehicle *owners* (not lienholders) who first pay "towing and storage costs." (Aston Ordinances § 422.05, § 422.06.) Indeed, the Township elsewhere acknowledges its "post-deprivation" hearing process is available to lienholders only after the abandonment declaration. (Aston Inter. Resp. No. 3 (stating that a post-abandonment hearing may be "requested either under the Pennsylvania [abandonment] statutes or the Township Ordinances"); Aston Resp. at 2, Doc. No. 28 (stating that Aston's "post-deprivation hearing process" for lienholders may be activated after the declaration of abandonment).)

After Osborne filed the 952 Form, Luongo's reported the amounts owed in towing and storage fees and sought authorization to "dispose" of the Accord. (Doc. No. 27-26, Ex. K (claiming $2500 in storage expenses and $250 in towing expenses).) On November 21, 2018, the Pennsylvania Department of Transportation informed Luongo's by letter that the Accord would be "disposed of as provided in Chapter 73 of the Vehicle Code" if it remained unclaimed for an additional thirty days. (Doc. No. 27-11, Ex. H.) Honda received this letter in September 2019—exactly how is unclear from the record—and then sought the car's return. (Doc. No. 27-2, Donahue Decl. ¶¶10-11.) Luongo's refused to return the car, however, until it settled with Honda in January 2021. (Id.)

When it was seized in August 2018, the Accord had an auction value of some $18,350. (Pl. SUMF ¶42.) By December 2020 (just before its return to Honda) the car's value was $14,925. (Id.)

**Aston's Policies**

The Township bases its handling of seized vehicles on: (1) Aston Township Ordinance Chapter 422; (2) Pennsylvania Motor Vehicle Code §§ 7303.1, 7305, 7307, and 7308; and (3) Aston Police Dept. Policy, Rule or Regulation 2-23.  (See Aston Inter. Resp. Nos. 5, 11; Aston RFP Resp. Nos. 8-13, 15.)

The Ordinance authorizes Aston Police to remove vehicles from the roadway if "the person driving . . . is arrested" and when "[t]he vehicle has been abandoned."  (§ 422.03(c)(3), § 422.03(c)(5).)  For cars seized incident to arrest (pursuant to § 422.03(c)(3))—but which are not held for evidence or forfeiture—Aston intends "to return the vehicle to the owners or others lawfully entitled to the vehicle *as soon as possible*."  (See Aston Inter. Resp. No. 3 (emphasis added); see also Aston RFA Resp. No. 11.)  The Township seeks to notify owners that their vehicles have been seized using the Commonwealth Law Enforcement Assistance Network (CLEAN) to identify the owner and send police to his last known address.  (Aston Inter. Resp. Nos. 3, 7, 10.)

It appears that before 2019, the identities of those holding secured interests in New York State vehicles were accessible via CLEAN.  See Kearns v. Cuomo, 981 F.3d 200, 205 (2d Cir. 2020) (describing new information disclosure restrictions in New York's 2019 'Green Light' law); New York v. Wolf, 2020 WL 6047817, at *3 (S.D.N.Y. Oct. 13, 2020) (access to New York DMV records through NLETS has been discontinued); PENNSYLVANIA STATE POLICE, CLEAN, https://www.psp.pa.gov/law-enforcement-services/Pages/Commonwealth-Law-Enforcement-Assistance-Network.aspx ("CLEAN is Pennsylvania's conduit to . . . Nlets [sic], the International Justice and Public Safety Information Sharing Network"); (Aston Inter. Resp. No. 8).

Yet, during its 2018 use of CLEAN, Aston did nothing to discover parties with a security

interest in the Accord or in any other seized vehicles. Rather, both then and now, the Township has "the Commonwealth take[] over the function of making notifications to . . . lienholders," by triggering the Pennsylvania abandoned vehicles process after a seized vehicle has "remained unclaimed for a period of more and after approximately 30 days. . . ." (Id.); 75 Pa.C.S.A. § 7305 ("The department upon receipt of an abandoned vehicle information report shall notify by certified mail . . . all lienholders of record . . . ."). Yet again, Aston falsely states that "in Pennsylvania once the vehicle is unclaimed for thirty days, the police are required to file an abandoned property form." (Aston Resp. 2-3.) In truth, this 'requirement' appears nowhere in the applicable statutes. Compare 75 Pa.C.S.A. § 7307 (Commonwealth shall authorize disposal of vehicles 30 days after notice sent to all owners and lienholders if they remain unclaimed); 75 PA.C.S.A. § 102 (defining vehicles that have "remained on the private property of a salvor for 20 days" as presumptively abandoned).

Pennsylvania law provides for notifying lienholders and the opportunity for a hearing after a vehicle is declared abandoned:

> The hearing shall be before a civilian officer or employee of the municipality in which the vehicle was reported as abandoned. If as a result of the hearing it is determined that the vehicle was not abandoned, the owner or lienholder may retrieve the vehicle within 48 hours without payment of any of the fees . . . .

75 Pa.C.S.A. § 7305(b)(5).

### PROCEDURDAL HISTORY

Honda filed a Complaint against Aston and Luongo's on July 7, 2020 and an Amended Complaint followed on August 5. (Doc. Nos. 1, 9.) Honda and Luongo's settled their dispute in January 2021. (Honda Resp. at 2 n. 2, Doc. No. 29.)

With discovery complete, Honda moves for summary judgment as to Counts I (raising Due Process and Fourth Amendment claims via § 1983) and III (§ 2201—seeking a default judgment)

of its Amended Complaint. (Honda MSJ, Doc. No. 27.) Aston cross-moves, asking me to dismiss

all three Counts, including the Pennsylvania constitutional claims (Count II). (Aston MSJ, Doc.

No. 26.)

Deciding these Motions has been made unnecessarily difficult by Aston's repeated

misstatements, which I note throughout this opinion. Indeed, Honda has argued that I should

impose sanctions on the Township and its counsel. (See Doc. No. 35.)

**DISCUSSION**

**I.    Due Process**

To make out a due process violation, the plaintiff must show the deprivation of a cognizable

property interest without constitutionally sufficient process. See Montanez v. Secretary

Pennsylvania Department of Corrections, 773 F.3d 472, 482 (3d Cir. 2014). The Mathews factors

govern the process due an interest-holder:

> (1) the private interest that will be affected by the official action; (2) the risk of
> erroneous deprivation of the interest through the procedure employed, and the
> probable value of additional procedural safeguards, such as a hearing, and (3) the
> government's interest, including the fiscal and administrative burdens additional
> process would create.

Ritter v. Cohen, 797 F.3d 119, 123 (3d Cir. 1986) (citing Mathews v. Eldridge, 424 U.S. 319, 335

(1976)). "Due process is flexible and calls for such procedural protections as the particular

situation demands in order to minimiz[e] the risk of error . . . The amount of notice due depends

on the context." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 (3d Cir.

2000) (internal quotations and citations omitted).

Absent an "extraordinary situation," "prior notice and a hearing" are the bedrock

requirements of due process. United States v. James Daniel Good Real Property, 510 U.S. 43, 53

(1993). These must be provided "at a meaningful time and in a meaningful manner." Armstrong

v. Manzo, 380 U.S. 545, 552 (1965).  If pre-deprivation process is impracticable, then "*prompt post-[deprivation] notice and a hearing*" must be provided.  Propert v. District of Columbia, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (emphasis added) (citing Cokinos v. District of Columbia, 728 F.2d 502 (D.C. Cir. 1983); see, e.g., Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994) ("courts have uniformly held [in vehicle impoundment cases] that due process requires a prompt hearing"); HVT, Inc. v. Port Auth. of New York & New Jersey, 2018 WL 3134414, at *11 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) (notice must be sent to lienholders "promptly after seizure"); Craig v. Carson, 449 F. Supp. 385, 395 (M.D. Fla. 1978) (post-impoundment hearing "must be provided within a prompt and reasonable time period").

Here, Honda's lien over the Accord was a protected property interest.  See, e.g., Ford Motor Credit Co. v. NYC Police Dept., 503 F.3d 186, 191 (2d Cir. 2007) (citing Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983)) ("a security interest is indisputably a property interest protected by the Fourteenth Amendment").  "A secured creditor has two rights: the contractual right to repayment of the debt owed and the property right to the collateral that secures the debt in the event of non-payment."  Id. (citing Armstrong v. United States, 364 U.S. 40, 46 (1960) (a lienholder has a property interest in "the present value of a seized vehicle")).  Honda's contractual rights related only to the Accord's owner.  Aston's seizure and retention of the car impaired Honda's property interests, however, depriving Honda of the collateral for its lien while the collateral's value steadily depreciated.  Luongo's towing and storage fees also impaired Honda's interest by effectively subordinating the priority of the Company's lien.  See, e.g., Connecticut v. Doehr, 501 U.S. 1, 12 (1991) (". . . our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are

sufficient to merit due process protection."); Sutton v. City of Milwaukee, 672 F.2d 644, 645 (7th Cir. 1982) (property deprivation "need not be permanent to be actionable"); Mays v. Scranton City Police Dept., 503 F. Supp. 1255, 1258 (M.D. Pa. 1980) ("the de facto creation of a mechanic's lien for towing and storage charges without notice or an opportunity for a hearing constituted a deprivation of property without due process").

Aston again misstates the law, urging that the "refusal of [] Luongo's Towing to return the vehicle without payment of fees did not implicate Aston . . . ." (Aston Resp. at 21.) In fact, Luongo's actions are imputed to Aston:

> Nor is there substance in appellants' argument that the state action required . . . is lacking. A police officer makes the initial determination that a car will be towed and summons the towing company. The towing company tows the vehicle only at the direction of the officer. . . . The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws. Thus, the private towing company is a willful participant in a joint activity with the State or its agents; and there is a "sufficiently close nexus between the State and the challenged action of the (towing company) so that the action of the latter may be fairly treated as that of the State itself.

Stypmann v. City and County of San Francisco, 557 F.2d 1338, 1341-42 (9th Cir. 1977) (internal citations and quotations omitted).

I must thus apply the Mathews factors—which Aston does not address—to determine if Aston comported with due process. My application of the factors is limited: I will consider only whether Aston was obligated to provide notice and the opportunity to request a hearing at some point after the initial seizure (on August 30) but before the September 24 triggering of the state abandonment process—the constitutionality of which the Parties concede. (Aston Resp. at 15; Honda Resp. at 10-11.)

Unfortunately, as I have discussed, Aston did not follow the Pennsylvania statutory regime, which is both facially inapplicable to seized vehicles like the Accord, and contemplates that any

abandoned vehicle report be completed at the time of the tow and submitted to PennDOT "within 48 hours," not twenty-five days later. See 75 Pa.C.S.A. §7303.1; §7304. Honda suffered ongoing economic harm during this unwarranted delay: fees accumulated while the Accord's value depreciated, and the Company was denied income by selling or leasing the car. The Mathews factors make apparent that Honda was not afforded due process.

First, Honda's private interest in the Accord was "considerable." See Ford Motor Credit Co., 503 F.3d at 194 (recognizing the significance of lienholder interest impaired by government seizure, including the vehicle's "present value" and "income stream"); American Honda Finance Corp., 471 F.Supp.3d at 407 ("lienholders . . . have an equally valid interest in protecting their stake in the property" as vehicle owners); cf. Scofield v. City of Hillsborough, 862 F.2d 759, 762 (9th Cir. 1988) ("[t]he uninterrupted use of one's vehicle is a significant and substantial private interest").

Next, although Aston's delay in notifying Honda did not itself increase the risk of an erroneous deprivation, prompt notice and the opportunity to demand a hearing would be of obvious value to lienholders. See Coleman, 40 F.3d at 261 ("The risk of erroneous deprivation is neither increased nor decreased by the timing of the postdeprivation hearing. However, we note that a more expeditious hearing would significantly reduce the harm suffered by owners wrongly deprived of the use of their vehicles.").

Moreover, the continual depreciation of the Accord's value and the denial of an income stream to Honda mean that "the risk of erroneous deprivation is cause for heightened concern," because these harms "cannot be recompensed by the claimant's prevailing in later proceedings." Simms v. District of Columbia, 872 F.Supp.2d 90, 103 (D.C. Cir. 2012) (citing Krimstock v. Kelly, 306 F.3d 40, 63-64 (2d Cir. 2012) ("an owner cannot recover the lost use of a vehicle by prevailing

in a forfeiture proceeding. The loss is felt in the owner's inability to use a vehicle that continues to depreciate in value as it stands idle in the police lot")); see also id. at 104 (requiring a "prompt post-seizure" hearing regarding a seized vehicle).  Accordingly, although Aston commits to provide a hearing eventually, that does not give the lienholder the opportunity to recover the *value lost* while its car sits at Luongo's.  See 75 Pa.C.S.A. §7305(b)(5) (limiting hearing to determining if a vehicle was abandoned); (Aston Resp. at 2).

Third, providing prompt notice to lienholders would not substantially burden Aston.  See DCFS USA v. District of Columbia, 803 F.Supp.2d 29, 42 (D.D.C. Aug. 17, 2011) (it would have taken "little effort" for municipal employees to discover an out-of-state lien and mail notice to the holder).  Once again, it appears that Honda's lien interest was readily apparent on the New York Department of Motor Vehicles records accessible in 2018 through the "CLEAN" system by which Aston identified the owners of seized vehicles.  Indeed, as I have discussed, Aston had communicated directly with New York state law enforcement in trying to notify the Accord's owner of its seizure.  (Pl. SUMF ¶19.)  In these circumstances, even if Honda's lien was not disclosed through a CLEAN search, asking the NY personnel Aston had already contacted to identify both the Accord's owner and any lienholder would hardly have been burdensome.  Aston does not suggest that it would have been, and could not reasonably do so.  Once informed of the lien by New York, a letter to Honda is all the additional effort that would have been required.  Such minimal efforts would have been in keeping with Aston's stated goal of "return[ing] the vehicle to the owners or others lawfully entitled to the vehicle as soon as possible" after seizure.  (Aston Inter. Resp. No. 3.)

In sum, application of the Mathews factors confirms that Aston provided Honda inadequate process in seizing and keeping the Accord because Aston needlessly delayed notifying Honda that

it had been seized. Honda's interest in reclaiming the Accord—and in doing so quickly, before significant depreciation, fees, and lost revenues accrued—was substantial. A delay of twenty-five days before even attempting to notify lienholders simply does not comport with due process where, as here, denial of notice meant the denial of an opportunity for a timely hearing. Compare Propert, 948 F.2d 1327 (citing Sutton, 672 F.2d at 645) (notice by mail within 24 hours of tow was sufficiently prompt) and Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1325 (9th Cir. 1982) ("provision for a post-seizure hearing within forty-eight hours [of demand] satisfies the requirements of due process") and HVT, Inc. v. Port Auth. of New York & New Jersey, 2018 WL 3134414, at *15 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) (period for "proper notice and a hearing" is no more "than a few days") and Oberhausen v. Louisville-Jefferson Cty. Metro Gov't, 527 F. Supp. 2d 713, 724 (W.D. Ky. 2007) (hearing available within 72 hours) with Coleman, 40 F.3d at 261 ("a seven-day delay [between vehicle's seizure and the provision of a hearing] is clearly excessive") and Stypmann, 557 F.2d at 1344 ("A five-day delay in justifying detention of a private vehicle is too long.")

Aston offers no authority to support its contention that this twenty-five day delay comports with due process. Those decisions I have found involving comparable delays are readily distinguishable. See, e.g., City of Los Angeles v. David, 538 U.S. 7151 717-19 (2003) (vehicle owner was able to recover his vehicle pending a hearing delayed by twenty-seven days, and the City was able to show massive administrative burdens necessitated the delay: "the Due Process Clause does not prohibit an agency from imposing this kind of procedural delay when holding hearings to consider *claims of the kind here at issue*.") (emphasis added); Abernathy v. City of Pittsburgh, 2018 WL 6385021, at *2 (W.D. Pa. Dec. 6, 2018), aff'd, 795 F. App'x 85 (3d Cir. 2020)

(not precedential) (owner of towed car who apparently had notice before hearing thirty days later did not suffer due process violation); see also Brite Financial Services, LLC v. Bobby's Towing Service, LLC, 461 F.Supp. 3d 549, 559-60 (E.D. Mi. May 15, 2020) (acceptable length of delay "turns on whether the [state's] laws provide a means for Plaintiffs to regain possession of their vehicles pending a hearing"); Darulis v. Clark, 2009 WL 10671546 (S.D. Ca. June 17, 2009) (distinguishing David where owner was unable to repossess the vehicle during delay period).

By contrast, here, Honda was denied the opportunity to recover the Accord for more than twenty-five days because the Company did not even know Aston had seized it. Once again, Aston has presented no evidence suggesting administrative necessity prevented prompt lienholder notice. Rather, as I have discussed, the record suggests that any added burden would not be significant.

Aston presents three additional 'defenses':

First, the Township contends that Honda has failed to prove that "it had a publicly recorded interest in the [Accord]" between the times of the seizure and Aston's abandonment declaration. (Aston Resp. at 1-2, 24.) Yet again, this is simply untrue. Honda has presented uncontradicted evidence that in June 2018 (at the latest) it publicly recorded a lien over the Accord in New York, and that the lien remained continuously through at least November 2020. (Honda Reply at 7-9; NY DMV Record, Doc. No. 27-8.)

Aston next urges that providing timely notice is the Commonwealth's "exclusive role," pursuant to a statutory scheme that "pre-empts local agency involvement." (Aston Resp. at 12-16.) The Township thus appears to argue (again misstating the law) that state government alone controls "once the local agency notifies the Commonwealth of an unclaimed vehicle." (Id. at 16 (citing a holding that the PA Motor Vehicle Code does not preempt local ordinances for the opposite conclusion).) This is beside the point and, once again, untrue. Had Aston Police

completed the 952 Form within forty-eight hours of the Accord's seizure—as required by the Commonwealth—Pennsylvania's procedures would have followed. By waiting twenty-five days before filing its misleading 952 Form, Aston had already failed in its due process obligations.

Moreover, the Township presents no authority to support its preemption argument, presumably because none exists. That is undoubtedly why Aston has acted throughout as though its hands were *not* tied by the Commonwealth, taking action to notify the owners of seized vehicles (even though such notice is also provided for in the state procedure) and waiting some thirty days before declaring vehicles presumptively abandoned (even though Pennsylvania law, insofar as it can be stretched to apply, would seem to require that determination be made after only twenty). (Def. SUMF ¶6; Pl. SUMF ¶19 (describing Aston's efforts to notify the Accord's owner before declaring it abandoned); 75 Pa.C.S.A. §7305(a); 75 Pa.C.S.A. §102 (a vehicle will be presumed abandoned when it "has remained on the private property of a salvor for 20 days.").

Finally, Aston argues that because Honda failed to exploit available post-deprivation procedures it may not maintain this §1983 suit. (Aston Resp. 10-12 (noting tort, Refund Act, and Agency Law remedies).) Aston bases this argument, incorrectly, on the holding of Hudson v. Palmer (itself an application of Parratt v. Taylor), which applies where (unlike here) "a state officer randomly and without authorization departs from established state procedures"; in such an instance, "the state need only provide post-deprivation procedures." Revell v. Port Authority of New York, New Jersey, 598 F.3d 128, 138 (3d Cir. 2010) (citing Parratt v. Taylor, 451 U.S. 527; Hudson v. Palmer, 468 U.S. 517 (1984)). Here, however, Aston acknowledges that it took its challenged actions pursuant to Township custom—they were not random or unapproved: "Parratt was not designed to reach such a situation." Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982); see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877,

880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, *ipso facto*, satisfy due process."); (Aston Resp. to Inter. Nos. 3, 4.) Accordingly, the availability of, for example, state law replevin or conversion actions would not satisfy due process and Honda's failure to pursue them has no bearing on the viability of this suit. See Coleman, 40 F.3d at 262 ("the availability of state law postdeprivation remedies [such as a replevin statute] bears relevance only where the challenged acts of state officials can be characterized as random and unauthorized"); see also Frier v. City of Vandalia, Ill., 770 F.2d 699, 701 (7th Cir. 1985) (Sutton and "many other cases" suggest "that the City must establish the process and tender an opportunity for a hearing; it may not sit back and wait for the aggrieved person to file a suit").

Finally, as I have discussed, in September 2019, after Honda received notice of the Accord's August 2018 seizure, the Company apparently could have requested a hearing, at which it could have disputed that the Accord was actually abandoned. If successful, Honda would have been spared Luongo's towing and storage fees. 75 Pa.C.S.A. § 7305(b)(5). This postdeprivation remedy would not have been adequate, however, because the Company could not have recovered the losses caused by the Accord's depreciation and the denial of income the car would have generated during the time it was impounded. See id. (hearing limited to seeking return of vehicle without payment of fees); Logan, 455 U.S. at 436. Moreover, because once Aston gave the Accord to Luongo's the Township knew that anyone with a security interest in the car would suffer economic harm during the twenty-five days the Township dithered, the postdeprivation remedy available to Honda was inadequate. See Stana v. Sch. Dist. of City of Pittsburgh, 775 F.2d 122, 130 (3d Cir. 1985) ("if it were possible for the state or its entity to know that the deprivation was

about to occur, the state could have provided predeprivation process"); (Pl. SUMF ¶19 (Aston waited twenty-four days even to attempt notifying Accord's owner); Aston Resp. to Inter. Nos. 3, 4 (this period of delay is part of Aston's custom)).

In sum, the availability of postdeprivation procedures did not cure Aston's violation of Honda's due process rights.

## II.    __Monell__ Liability

Because the Township admits that its treatment of the Accord followed Aston's standard practice for dealing with vehicles seized similarly, Monell liability attaches here.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).

To establish municipal liability, Honda must show that it suffered injuries caused by Aston's unconstitutional "policy or custom".  See Forrest v. Parry, 930 F.3d 93, 105-106 (3d Cir. 2019) (explaining manner of establishing liability); see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997) (policy or custom must be the "moving force" behind the injury alleged).  "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Brown, 520 U.S. at 404.  The existence of such an "unconstitutional custom or practice" may be established by a municipality's admissions in discovery.  Open Inns, Ltd. v. Chester Cty. Sheriff's Dep't, 24 F. Supp. 2d 410, 429-30 (E.D. Pa. 1998); see also Fed. R. Civ. P. 56; Flores v. City of Mount Vernon, 41 F. Supp. 2d 439, 446 (S.D.N.Y. 1999) (Monell liability established where policy was "admitted"); Melendez v. City of Waterbury, 2012 WL 569324, at *5 (D. Conn. Feb. 21, 2012); Russo v. City of Bridgeport, 2008 WL 2167881, at *1 (D. Conn. May 21, 2008).

Here, Aston has admitted that it followed established Township practice in its treatment of

the Accord. (See Aston Resp. to Inter. Nos. 3, 4 (describing Aston's standard procedures for treating "vehicles that have been impounded after an owner is arrested," where neither evidentiary nor forfeiture issues exist, and stating those procedures were followed here).) That practice, as I have discussed, includes falsifying documents and failing to provide lienholders prompt notice and the opportunity for a hearing. That practice is thus unconstitutional and plainly caused Honda to incur economic harm.

Aston cannot evade municipal liability by attributing Honda's injuries solely to the Commonwealth because, as I have explained, Aston's custom and practice regarding seized vehicles (like the Accord) and lienholder notice are not even *consistent with* Pennsylvania law, let alone required by it. See Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993) (procedures required by state law provided no defense for municipality that freely chose its own procedures) cited with approval in Doby v. DeCrescenzo, 171 F.3d 858, 868 (3d Cir. 1999). Because Aston itself adopted a practice of failing to notify lienholders promptly after vehicle seizure, the Township must accept the consequences of that decision.

In these circumstances, Honda has established Monell liability.

### III.    Declaratory Judgment

Consistent with my due process discussion, I will enter declaratory judgment in favor of Plaintiff American Honda Finance Corp., and against Defendant Aston Township, as sought in Count III of the Amended Complaint, as follows:

> Aston Township's custom and practice in seizing and impounding vehicles violates Due Process under the Fourteenth Amendment.

### IV.    Honda's Remaining Claims

In light of my ruling on the due process claim, I will not address Honda's Fourth Amendment and Pennsylvania Constitutional claims.

## V. Damages

As I have decided that Honda's procedural due process rights were violated, Honda is, at a minimum, entitled to nominal damages. See Burns v. PA Dep't of Correction, 544 F.3d 279, 284 (3d Cir. 2008). Because Aston has not contested Honda's calculation of damages, I may rely on that calculation. See LaSalle Bank, N.A. v. Capco Am. Securitization Corp., 2006 WL 1227539, at *1 (S.D.N.Y. May 5, 2006). I decline to do so, however, because the Parties barely mention the question of compensatory damages in their Summary Judgment briefing. Compare HVT, Inc., 2018 WL 3134414, at *15. Exactly what part of the economic harm Honda sustained between August 2018 and January 2021 is attributable to Aston's wrongful actions is unclear. Honda may renew its request for compensatory damages so that the issue may be properly considered. I will at that time also consider the appointment of a monitor to ensure that Aston changes its notice practices. See Fed. R. Civ. P. 53.

## VI.    Conclusion

By continually misstating the law and blaming the Commonwealth for its own conduct, Aston Township only underscores that it has acted impermissibly.  The undisputed facts show that by its treatment of seized vehicles—including backdating and falsifying documents—Aston acted contrary to Pennsylvania's statutory mandates and violated the Constitution.  Indeed, the Township's slipshod and dilatory treatment of the Accord, suggests that Aston did not wish to identify the car's lienholder.  Honda appears to have learned of the car's seizure only by serendipity.

In these circumstances, I will thus grant summary judgment in favor of Honda on its due process and declaratory judgment claims.

An appropriate Order follows.


**AND IT IS SO ORDERED:**

Dated: June 30, 2021                                    */s/ Paul S. Diamond*

                                                        _____
                                                        Paul S. Diamond, J.